IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| WILLIAM SALAAM HALL-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV1037 |
| | ) | |
| UNITED STATES and RUSTY PATE, | ) | |
| individually and in his official capacity | ) | |
| as Assistant District Manager, Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on Defendant's motion to dismiss or, in the alternative for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56. (Docket Entry 13.) Plaintiff William Salaam Hall-El, appearing *pro se*, opposes the motion. (Docket Entry 17.) Also before the court are Plaintiff's motion for default judgment (Docket Entry 18) and motion for entry of default (Docket Entry 21). For the following reasons, it is recommended that the Court grant Defendant's motion to dismiss. It is further recommended that the Court deny Plaintiff's motion for default judgment and motion for entry of default.

**I. BACKGROUND**

Plaintiff filed this action in the District Court of Guilford County, North Carolina on October 24, 2011. (Docket Entry 5.) The complaint named Rusty Pate, Assistant District Manager with the Social Security Administration's Greensboro Field Office, individually and

in his official capacity, as Defendant. On November 28, 2011, Defendants removed this action to this Court pursuant to 28 U.S.C. §§ 1441, 1442 and 1446. (Docket Entry 1.) On December 6, 2011, this Court ordered that "as to the state common law tort claims set forth in Plaintiff's complaint, the United States is substituted in place of the individual Defendant Rusty Pate." (Order, Docket Entry 9.) This court further ordered that Defendant Pate would remain a defendant with regard to the constitutional tort claims. (*Id.*)

In his *pro se* complaint, Plaintiff alleges that on October 17, 2011, he went to the Social Security office in Greensboro "in an attempt to correct" the name on his Social Security card by adding the suffix "El" to his last name. (*See* Compl. at 5, Docket Entry 5.) According to the allegations in the complaint, an unnamed SSA employee informed Plaintiff that he would first have to obtain a court order changing his name before "–El" could be reflected on his Social Security card. (*Id.*) Defendant Pate confirmed this requirement to Plaintiff. (*Id.*) Plaintiff alleges that the "-El" suffix reflects his Moorish nationality and that the demand was "made in accordance with [his] religious beliefs." (*Id.* at 12.) Plaintiff also alleges that he has "been involuntarily forced into an 'unrighteous', egregious state against [his] religious beliefs" and that he has "been under extreme mental anguish at not being in obedience to [his] Divine Creator after repeatedly being told by [Defendants] untrue statements." (*Id.* at 6.)

Plaintiff alleges that after leaving the Greensboro SSA office, he sent Defendant Pate an e-mail requesting that he provide Plaintiff with "the 'law' that required [him] to get a 'court ordered' name change, when in fact the North Carolina Department of Motor Vehicles and the North Carolina Department of Health & Human Services had both

2

Case 1:11-cv-01037-UA-JLW   Document 25   Filed 04/03/13   Page 2 of 12

honored [his] religious rights without issue." (Compl. at 6.) Defendant Pate responded to the e-mail, again telling Plaintiff that he could not change his name for Social Security purposes without proper documentation. (*Id.*; *see also* Affidavit of Rusty Pate ¶ 6, Docket Entry 14-1.)

Plaintiff subsequently filed this action alleging: (1) that Defendant Pate committed or conspired to commit criminal and unconstitutional acts, including violating Plaintiff's First, Fourth, and Thirteenth Amendment rights under the United States Constitution, (2) a violation of the Treaty of Peace and Friendship between Morocco and the United States pursuant to Article VI of the United States Constitution, (3) fraud, (4) deprivation of Plaintiff's right to work, (5) intentional infliction of mental anguish, (6) involuntary servitude, (7) hindrance of unlimited right to contract, and (8) violating or conspiring to violate "United States Codes TITLE 22 CH 73, TITLE 18 CH 13 § 241, 242." (Compl. at 7-8, Docket Entry 5.)

## II. DISCUSSION

### 1. Standard of Review

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 U.S. 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. Id. at 93 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege

3

facts which set forth a federal claim, *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for the lack of subject matter jurisdiction. Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court. *Mansfield, C & L. M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884). Should a defendant challenge the existence of federal subject-matter jurisdiction, the plaintiff bears the burden of showing the jurisdiction exists. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A "court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). As the party invoking federal jurisdiction in this case, Plaintiff has the burden of establishing the existence of subject matter jurisdiction. *Richmond*, 945 F.2d at 768. This burden, at the pleading stage, can be met by alleging sufficient facts to show that there is a proper basis for jurisdiction. Fed. R. Civ. P. 8(a)(1) (a complaint "shall contain a short and plain statement of the grounds upon which the court's jurisdiction depends").

Defendants also seek dismissal pursuant to Federal Rule of Civil Procedure 12 (b)(6) for failure to state a claim or, in the alternative, for summary judgment pursuant to Rule 56. A motion to dismiss under Rule 12 (b)(6) for failure to state a claim should be granted if the

4

complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A Rule 12 (b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

Under Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing *Anderson*, 477 U.S. at 247-48).

**2. Subject Matter Jurisdiction**

Defendant Pate first argues that this court lacks subject matter jurisdiction to award relief against Defendant Pate in his official capacity under the doctrine of sovereign immunity and that Defendant Pate has not waived his immunity from suit. This argument has merit. A suit to recover damages against the United States without its consent is barred by the doctrine of sovereign immunity. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *Campbell v. Social Sec. Admin.*, 446 Fed. Appx. 477, 482 (3d Cir. 2011); *accord Glover v. Social Sec. Admin.*, No. 1:12CV372, 2012 WL 1718827, at *3 (M.D.N.C. May 14, 2012). A suit against a federal agency is a suit against the United States for the purposes of sovereign immunity, and sovereign immunity cannot be avoided by suing individual federal employees. *See Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 388 (D.N.J. 1996) (finding a lack of subject matter jurisdiction to hear civil rights claims against the Social Security Administration and its employees in their official capacities, given absence of express waiver of the United States' sovereign immunity); *Proffitt v. United States*, 758 F. Supp. 342, 345 (E.D. Va. 1990)

6

("[T]he United States is not a person within the meaning of § 1985 . . . [n]or can plaintiff recover monetary damages against the individual defendants sued in their official capacity.") Accordingly, Plaintiff's action as to Defendant Pate and the United States should be dismissed for lack of subject matter jurisdiction.

### 3. Qualified Immunity

Defendant Pate also argues that the constitutional claims against him are barred under the doctrine of qualified immunity because his conduct did not violate established statutory or constitutional rights of which a reasonable person would have known. The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields public officials from personal liability for performance of their official duties, provided that they do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. A court considers whether the rights allegedly violated by the public official were clearly established at the time of the challenged conduct, and whether such conduct was objectively reasonable. As such, if there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

*Martin v. St. Mary's Dept. Social Servs.*, 346 F.3d 502, 505 (4th Cir. 2003) (internal quotations and citations omitted).

Plaintiff here has failed to allege that Defendant Pate's conduct (1) violated a federal statutory or constitutional right that (2) was clearly established at the time of the conduct, such that (3) an objectively reasonable Social Security employee would have understood that the conduct violated that right. Moreover, as pointed out by Defendants, Defendant Pate's actions were not prohibited by federal law. Under the Social Security Act, "The Commissioner of Social Security shall require of applicants for social security account numbers such evidence as may be necessary to establish the age, citizenship, or alien status,

7

and true identity of such applicants, and to determine which (if any) social security account number has previously been assigned to such individual." 42 U.S. § 405(c)(2)(B)(ii). Further, Social Security regulations provide:

> An applicant for an original social security number card must submit documentary evidence that the Commissioner of Social Security regards as convincing evidence of age, U.S. citizenship or alien status, and true identity. An applicant for a replacement social security card must submit convincing documentary evidence of identity and may also be required to submit convincing documentary evidence of age and U.S. citizenship or alien status. AN applicant for an original or replacement social security number card is also required to submit evidence to assist us in determining the existence and identity of any previously assigned number(s). A social security number will not be assigned, or an original or replacement care issued, unless all the evidence requirements are met.

20 C.F.R. § 422.107(a). Finally,

> An applicant for an original social security number or a replacement social security number card is required to submit convincing documentary evidence of identity. Documentary evidence of identity may consist of a driver's license, identity card, school record, medical record, marriage record, passport, Department of Homeland Security document, or other similar document serving to identify the individual. The document must contain sufficient information to identify the applicant, including the applicant's name and (1) the applicant's age, date of birth, or parents' names; and/or (2) a photograph or physical description of the individual.

20 C.F.R. § 422.107(c).

This issue was addressed by a federal district court in Ohio, in *Jennings-El v. Social Security Admin.*, No. 1:07-cv-287, 2007 WL 1114237, at * 2 (S.D. Ohio April 12, 2007). The court in *Jennings* dismissed the plaintiff's claims that the SSA had violated his constitutional rights by requiring him to obtain a name change before "-El" could be reflected on his Social Security card. The court stated:

8

> The requirement that plaintiff obtain proper verification of his identity before a Social Security card may be issued does not deny plaintiff his right to use a name which reflects his nationality. It simply reflects legitimate governmental policies of reducing identity theft and ensuring fiscal responsibility. The verification requirement does not, to this Court's knowledge, violate plaintiff's constitutional rights. Nor is there any other logical construction of plaintiff's complaint from which the Court can divine a viable claim against the defendant over which the Court might have jurisdiction.

*Id.* Similar considerations are at play in this case. Requiring an individual to have a court ordered name change before changing the name on his Social Security card simply does not violate that individual's constitutional rights.

Moreover, internal policies of SSA, as documented in the Programs Operations Manual System (POMS), specifically identify the forms of acceptable evidence necessary for SSA processing of name changes. *See* POMS RM 10212.010, 2010 WL 835111 (Mem. Supp. Mot. to Dismiss, Ex. A-4, Docket Entry 14-1.) Under these regulations, in the absence of a change in marital or domestic partnership status, the SSA requires either a United States court ordered name change or a United States amended/corrected birth certificate. *Id.* As such, Defendant Pate's conduct was clearly not prohibited by federal law. Defendant Pate's motion to dismiss on qualified immunity grounds should be granted.

### 4. State Law Claims

Plaintiff has alleged state law tort claims against the United States. Defendant argues that these state law claims should be dismissed for failure to exhaust administrative remedies. The court agrees. Defendant submitted the Declaration of Mark S. Ledford, a Division Director in the Office of General Counsel, who states that "to the best of my knowledge, information and belief, no administrative tort claim has been filed against SSA by William

9

Case 1:11-cv-01037-UA-JLW   Document 25   Filed 04/03/13   Page 9 of 12

Salaam Hall." (Def.'s Mem., Ex. C, Declara. of Mark S. Ledford, Docket Entry 14-3.) Under the Federal Tort Claims Act (FCTA):

> An action shall not be instituted upon a claim against the United States for money damages for . . . injury or loss . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally decided by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675 (a). This exhaustion requirement is jurisdictional and cannot be waived. *See Plyler v. United States*, 900 F.2d 41, 42 (4th Cir. 1990). Plaintiff has failed to file an administrative claim for the injury and damages sought in his claim against Defendant United States. Plaintiff's failure to file claim with the proper administrative agency mandates dismissal of the action under the Federal Torts Claim Act. *Henderson v. United States*, 785 F.2d 121, 124 (4th Cir. 1986).

**5. Failure to State a Claim**

As an additional ground for their motion to dismiss, Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted and that dismissal is proper pursuant to Fed. R. Civ. P. 12 (b)(6). This court has previously found that dismissal is warranted for lack of subject matter jurisdiction and on the basis of sovereign immunity and qualified immunity. Briefly, it is clear as well that Plaintiff has failed to state a claim against the Defendants under the requirements of *Iqbal* and *Twombly*. Plaintiff has alleged no facts to support a plausible claim against Defendants. The complaint is replete with contentions regarding Plaintiff's status as a Moorish national. Plaintiff alleges that he is "a Moorish-American protected by the Treaty of Peace and Friendship (1786 A.D. superseded 1836 A.D.) between Morocco and the United States . . ." (Compl. at 7) and later alleges that he is

"an internationally protected person pursuant to Title 18 U.S.C. section 112[.]" (*Id.* at 8.) In this court, and others, it is well-recognized that organizations such as the Moorish (or Washitaw) Nation are:

> notorious organization[s] of scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws. *Sanders-Bey v. United States*, 267 F. App'x 464, 466 (7th Cir. 2008) (finding that the "Washitaw Nation . . . is not recognized by the United States government"); *Bybee v. City of Paducah*, 46 F. App'x 735, 736-37 (6th Cir. 2002) (finding that the "Nation of Washitaw" is "fictional"); *United States v. Gunwall*, No. 97-5108, 1998 U.S. App. LEXIS 18596, at *11 (10th Cir. Aug. 12, 1998) (rejecting claim that the court had no jurisdiction over a member of the Washitaw as "frivolous"); *Bey v. Louisiana*, No. 08-cv-0250, 2008 WL 4072747 (W.D. La. July 11, 2008) (finding that plaintiff's claim to land as a member of the Washitaw was "patently frivolous" and rested on documents of "dubious legal significance"); *Great Seal Nat'l Ass'n of Moorish Affairs v. 46th Dist. Ct. of Oakland County*, No. 06-CV15625, 2007 U.S. Dist. LEXIS 3199, 2007 WL 169850 at *2 (E.D. Mich. Jan. 17, 2007) (dismissing claim that plaintiffs owned several parcels of property by virtue of their Moorish ancestry as "baseless, fantastic, and delusional" and finding the complaint to be "indecipherable"); *Khattab El v. U.S. Justice Dep't*, No 86-6963, 1988 WL 5117 at *5 (E.D. Pa. Jan. 22, 1988) (holding that "the United States has not recognized the sovereignty of the Moorish Nation," thus precluding sovereign immunity.)

*El-Bey v. United States*, No. 1:08CV151, 2009 WL 1019999 (M.D.N.C. Jan. 26, 2009) (unpublished). Plaintiff's claims which rely on international treaties or organizations and rights of Moorish nationals are clearly frivolous and do not state a claim against Defendants.

### 6. Motions Relating to Entry of Default and Default Judgment

Plaintiff has moved for entry of default and for a default judgment against Defendants. Neither of these motions have merit. Entry of default is appropriate where "a party against whom a judgment for affirmative relief is sought has failed to plead or

11

otherwise defend." Fed. R. Civ. P. 55 (a). On November 28, 2011, this case was removed from state court by the filing of a notice of removal. (Docket Entry 1.) On November 28, 2011, the Defendants filed a motion for extension of time to answer or otherwise plead (Docket Entry 4), which was granted on December 6, 2011. (Docket Entry 8.) Defendants were given until December 28, 2011 to answer or otherwise plead. On December 27, 2011, Defendant filed the instant motion to dismiss. (Docket Entry 13.) Defendants were not in default and entry of default is not appropriate. Having found that entry of default is not appropriate, Plaintiff may not obtain default judgment. *See* Fed. R. Civ. P. 55. Accordingly, Plaintiff's motions for entry of default and for default judgment should be denied.

## III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motion to dismiss (Docket Entry 13) be **GRANTED** for lack of subject matter jurisdiction, due to the immunity of Defendant, and for failure to state a claim. It is further **RECOMMENDED** that Plaintiff's motions for entry of default (Docket Entry 21) and for default judgment (Docket Entry 18) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
April 3, 2013